929 So.2d 353 (2006)
Baron McGEE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00497-COA.
Court of Appeals of Mississippi.
January 17, 2006.
Rehearing Denied May 23, 2006.
*356 Minor F. Buchanan, Jackson, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. A Hinds County jury convicted Baron McGee of murder and aggravated assault. He was given concurrent sentences of life and twenty years, respectively, in the custody of the Mississippi Department of Corrections. Feeling aggrieved, McGee appeals. He alleges the following as errors: (1) the jury's verdict was contrary to the overwhelming weight of the evidence; (2) the trial court erred by not granting his motion for a directed verdict at the close of the State's case and at the conclusion of the trial and by not granting his motion for a new trial or motion for a judgment notwithstanding the verdict; (3) the trial court erred in denying his successive motions for discovery to be provided with a witness's criminal history; (4) the trial court erred in overruling objections and denying numerous motions for a mistrial made in response to a witness's non-responsive, inadmissible, and prejudicial answers; (5) the trial court erred in allowing certain rebuttal testimony; (6) the trial court erred in denying motions for a mistrial stemming from numerous prejudicial and improper questions asked by the prosecution during its cross-examination of a certain witness; (7) the trial court erred in denying a motion for a mistrial after the prosecution made a "send a message to the community" argument to the jury, commented on personal opinions of guilt, and made the comment that just one juror could cause a hung jury; (8) the verdict of the jury should be set aside because McGee was denied a fair trial due to prosecutorial misconduct; (9) the trial court erred in denying the jury instructions submitted by McGee; and (10) the verdict of the jury should be set aside because McGee was denied a fair trial due to ineffective assistance of counsel.
¶ 2. Finding no reversible error, we affirm.

*357 FACTS
¶ 3. Late on the night of September 20, 2001, Cartrell Sessions was shot and killed. His friend, Ahmed Paige, was shot in the neck, but survived. Based on Paige's statement to the police, Baron McGee was arrested and charged with murder and aggravated assault.
¶ 4. At trial, Paige testified that he and Sessions were at his apartment on the night of September 20, 2001, when McGee came by to retrieve some videotapes and other items that belonged to him. According to Paige, he, Sessions, and McGee conversed for a while and then decided to walk to a nearby convenience store. Also, according to Paige, McGee and Sessions got into an argument while en route to the store. Paige further testified that after the two stopped arguing, McGee walked ahead of him and Sessions to a point around the corner of a building, and then turned and started shooting at them, killing Sessions and wounding Paige in the neck. Paige admitted that he did not actually see McGee shoot Sessions; he only saw a "dark colored arm" extend out from the area (around the corner of the building), where the gunshots that fatally wounded Sessions were fired, but he realized that it had to have been McGee who shot Sessions after he saw McGee standing in the area from where the two previous shots were fired, and after he saw McGee's face right before McGee shot him in the neck.
¶ 5. Candace Burton, a resident of the apartment complex where Paige lived, testified that she was outside of her sister's apartment when she heard some men arguing. She said that she turned her attention towards the argument and witnessed one of the men "pull a gun from his side and shoot the other two men." The following day, Burton gave a statement to the police detailing what she had witnessed the night before. However, her initial statement to the police was totally inconsistent with her testimony at trial.[1] Nevertheless, Burton remained steadfast in her position that she saw the shooter, and she positively identified McGee as the shooter from a photographic lineup of six individuals. In addition, Burton made an in-court identification of McGee as the person she saw shoot the two men.
¶ 6. McGee testified in his own defense. He denied being involved in the crime, denied shooting Sessions or Paige, and denied being present at Paige's apartment on the night that Sessions and Paige were shot. McGee's alibi was that he spent the entire night of the date of the incident at T.J. Jackson's house.[2] McGee also denied owning a gun. He admitted that he knew Paige but denied knowing Sessions.
¶ 7. Jackson testified that he did not know McGee's whereabouts the entire evening of September 20, 2001. He acknowledged that McGee came home after work and they, along with other friends, drank beer that night. Jackson further testified that he became so drunk that he passed out around eight or nine that night. When he awoke around one o'clock the next morning, McGee was outside listening to music. Jackson admitted that all he knew was that McGee was present at his house when he passed out and that when he awoke McGee was there, but he had no *358 idea whether McGee had remained at the house while he was asleep.
¶ 8. Altawan Bibbs was called by the State to rebut McGee's alibi defense. Bibbs testified that he had been with McGee and Sessions on numerous occasions and that McGee did indeed know who Sessions was. Bibbs also testified that McGee came by his house around 11:00 p.m. on the night of the shooting. Bibbs further testified that he specifically remembered this fact because shortly after McGee left his house, he received a phone call informing him of the death of Sessions and the shooting of Paige.
¶ 9. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Weight and Sufficiency of the Evidence
¶ 10. In his first two assignments of error, McGee combines his arguments regarding the legal sufficiency of the evidence with his arguments regarding the weight of the evidence. We address them separately below.

(a) Weight of the Evidence
¶ 11. McGee asks us to reverse his convictions because the jury's verdict was contrary to the overwhelming weight of the evidence and the trial court erred in denying his motion for a new trial. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, [appellate courts] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005) (quoting Herring v. State, 691 So.2d 948, 957 (Miss.1997)). "However, the evidence should be weighed in the light most favorable to the verdict." Id. It is within the discretion of the court whether to grant a new trial, and this discretion should be exercised "only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 12. McGee's basic contention is that the State's case relied wholly on the testimony of two witnesses whose stories are questionable at best. McGee also argues that Paige would have been a prime suspect in the absence of his own self-serving testimony, and that Burton lacked credibility, because her trial testimony differed from the initial statement which she gave to the police. McGee also points out that the physical facts of the crime scene did not support Page's and Burton's testimony.
¶ 13. We cannot view the evidence in the light most favorable to the verdict and say that an unconscionable injustice resulted from the jury's verdict, even though we acknowledge that there were unexplained blood trails at the crime scene and a perplexing situation about the location of a mug that was believed to be in Sessions's possession when the shooting occurred, but yet was found some distance from Sessions's body. Furthermore, we are cognizant of the inconsistencies in Burton's statement to the police and her trial testimony. If this conflicting evidence was the only substantive proof that the State presented to the jury, perhaps McGee's argument for a new trial would be more compelling.
¶ 14. However, as previously discussed, Burton identified McGee as the person she saw shoot the two men that night. She positively picked McGee out of a photographic lineup of six individuals. She also made an in-court identification of McGee *359 as the shooter. The discrepancies in Burton's account of what happened that night are of little consequence because she correctly stated that two men got shot that night; she correctly stated that one of the men was killed and the other was wounded; and she correctly stated that the wounded man ran into an apartment and immediately came out and left hurriedly in a car. Paige provided corroboration for Burton's testimony. Paige identified McGee as the person who shot him in the neck. Paige testified that McGee shot him in the neck shortly after McGee shot and killed Sessions. There was also physical evidence which corroborated both Paige's and Burton's testimony. There was a blood trail leading from Sessions's body to Paige's apartment, blood throughout Paige's apartment, more specifically his bathroom sink, and blood in Paige's car. All of this helped substantiate Paige's claim that after he got shot, he ran to his apartment to check on his wound before getting into his car and driving himself to the hospital. It also substantiates Burton's claim of what one of the men did after getting shot.
¶ 15. We cannot say that the evidence preponderates heavily against the jury's decision to find McGee guilty. Therefore, the trial court did not abuse its discretion in denying a new trial. This allegation of error is without merit.

(b) Sufficiency of the Evidence
¶ 16. McGee contends that the trial court erred in denying his motion for a directed verdict at the close of the State's case and at the conclusion of the trial, as well as in denying his motion for a judgment notwithstanding the verdict. A motion for a directed verdict or judgment notwithstanding the verdict both challenge the legal sufficiency of the evidence. The Mississippi Supreme Court has stated:
that in considering whether the evidence is sufficient to sustain a conviction in the face of motion for a directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." However, this inquiry does not require a court to `ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Bush, 895 So.2d at 843(¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). It is a well-settled principle of Mississippi law that "[w]hen the defendant proceeds with his case after the State rests and the court overrules the defendant's motion for a directed verdict, the defendant has waived the appeal of that directed verdict." Shelton v. State, 853 So.2d 1171, 1186(¶ 49) (Miss.2003) (citing Holland v. State, 656 So.2d 1192, 1197 (Miss.1995)). Therefore, McGee effectively waived his motion for a directed verdict when the trial court denied the motion and he proceeded with his case. Consequently, we limit our discussion to McGee's motion for a directed verdict at the conclusion of the trial and motion for a judgment notwithstanding the verdict.
¶ 17. Considering the evidence in the light most favorable to the State, we find that there was more than sufficient evidence for a reasonable jury to find that *360 McGee committed the crimes of murder and aggravated assault. The State not only produced a complaining victim, but also an eyewitness to the crime. Paige testified that McGee shot him in the neck after McGee shot and killed Sessions. Burton testified that she saw McGee shoot both Sessions and Paige. During the trial, both witnesses made positive identifications of McGee as the shooter. Dr. Steven Hayne, a forensic pathologist who performed an autopsy on Sessions, determined that Sessions's death was a homicide caused by two equally fatal bullet wounds to the chest. According to Paige and Burton, McGee inflicted these wounds. Therefore, the evidence presented was sufficient to support a conviction; McGee's point of error is without merit.

(2) Discovery Violations
¶ 18. McGee argues that the trial court erred in not granting his request for Paige's criminal record. More specifically, McGee contends that Paige's prior criminal convictions would have been exculpatory evidence. He points us to Uniform Circuit and County Court Rule 9.04 in support of his claim that he should have been provided Paige's criminal record. The trial court found that the rule does not require such discovery. We agree.
¶ 19. The rule requires the prosecution to disclose the criminal record of the defendant, not that of victims or other witnesses. Further, we fail to discern how Paige's criminal record would have been exculpatory evidence for McGee. It is true that the record may have aided the defense in impeaching Paige's credibility, but that is about the extent of its utility. Nevertheless, McGee still may have been able to obtain Paige's criminal record if he could have shown how the record was material to his defense. Rule 9.04(A)6 provides in part that "[u]pon a showing of materiality to the preparation of the defense, the court may require such other discovery to the defense attorney as justice may require." McGee did not show in the trial court, and has not shown in this appeal, how Paige's criminal record was material to the preparation of his defense. Therefore, we find no error in the ruling of the trial judge, refusing to order additional discovery in this regards.

(3) Paige's Testimony
¶ 20. McGee contends that the trial court erred during the testimony of Ahmed Paige. McGee specifically contends that the trial court (1) failed to require Paige to provide timely responses to questions, (2) allowed Paige to insert non-responsive, damaging statements into the record, and (3) failed to admonish the jury as needed. McGee contends that these errors served to deny him his constitutional rights to a fair trial and to confront witnesses against him. He argues that the trial court should have granted a mistrial due to Paige's non-responsive, inadmissible, and prejudicial answers on cross-examination.
¶ 21. Our review of the record indicates that McGee was not denied his constitutional right to confront witnesses against him. He was allowed to cross-examine Paige, as well as all other witnesses who testified for the State. As to his contention that Paige's actions on cross-examination denied him a fair trial, we find that Paige actually answered all questions asked of him on cross-examination, although not in the manner that the defense would have liked. We know of no case law that requires a finding that a defendant is denied a fair trial when questions are asked of a witness and the court fails to instruct the witness to answer the questions to the satisfaction of the asking attorney. However, McGee does cite Mississippi *361 Rules of Evidence 402, 611, and 702 as support for his contention. A thorough review of these rules reveals their inapplicability to McGee's contention. Furthermore, McGee fails to instruct us on the applicability of these rules to his argument. Therefore, we find this issue to be without merit.

(4) Uniform Circuit and County Court Rule 9.05
¶ 22. McGee argues that the trial court erred in allowing Bibbs's rebuttal testimony. He contends that it was error because the defense provided "informal notice" of an alibi defense by informing the prosecution of alibi witnesses, T.J. Jackson and Sam Marshall. McGee also argues that the prosecution failed to comply with Uniform Circuit and County Court Rule 9.05 when it failed to inform the defense of the identity of any potential rebuttal witnesses. McGee further argues that the prosecution kept Bibb's identity a secret in order to surprise and ambush him at trial, thereby causing severe prejudice to his rights.
¶ 23. Uniform Circuit and County Court Rule 9.05 imposes reciprocal responsibilities upon the prosecution and defense when dealing with alibi defense discovery. The rule provides in pertinent part:
Upon the written demand of the prosecuting attorney stating the time, date and place at which the alleged offense was committed, the defendant shall serve . . . . upon the prosecuting attorney a written notice of the intention to offer a defense of alibi, which notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon which the defendant intends to rely to establish such an alibi.
Within ten days thereafter, but in no event less than ten days before the trial, unless the court otherwise directs, the prosecuting attorney shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.
If, prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information previously furnished, the party shall promptly notify the other party or the party's attorney of the name and address of such additional witness.
URCCC 9.05. The record indicates that the prosecution complied with the first part of the rule. The defense admitted, on the record, that it did not give the prosecution any written notice of an alibi defense. Having failed to fulfill its obligations under the rule, the defense cannot now claim unfair surprise and prejudice to its case.
¶ 24. Moreover, the record indicates that Bibbs was discovered to be a rebuttal witness during the course of the trial. The record also indicates that as soon as Bibbs's identity and knowledge were discovered by the prosecution, the defense was informed and given access to the witness. The trial court offered the defense additional opportunities to interview Bibbs. Furthermore, the court was willing to postpone the trial for the remainder of that day in order to provide the defense more time to interview Bibbs. After conferring with his attorney, McGee refused the offer from the court and decided to proceed with the case. The court treated McGee's actions as a waiver of his objection *362 to Bibbs being able to testify. We agree.
¶ 25. In short, the prosecution complied with the dictates of the rule when it learned that Bibbs was a rebuttal witness. Therefore, we find that the court properly allowed Bibbs to testify. We find no merit in this allegation of error.

(5) Motions for Mistrial
¶ 26. McGee contends that the trial court erred in denying his motions for a mistrial during the prosecutor's cross-examination of him. McGee argues that the cumulative effect of the prosecutor's improper and prejudicial questions warrant reversing his conviction. He claims that the prosecutor's actions resulted in a jury decision influenced by prejudice. McGee specifically complains of the prosecutor asking him if he ever owned a gun after the court specifically told the prosecutor that she could not ask him that question. He also complains about the prosecutor's improper insinuation of a "relationship" between him and Jackson.
¶ 27. "Whether to grant a motion for a mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion." Shelton, 853 So.2d at 1183(¶ 41) (citing Pulphus v. State, 782 So.2d 1220, 1223(¶ 10) (Miss.2001)). "The failure of the court to grant a motion for a mistrial will not be overturned on appeal unless the trial court abused its discretion." Id. (citing Bass v. State, 597 So.2d 182, 191 (Miss.1992)).
¶ 28. We find that the trial court did not abuse its discretion by denying the various motions for a mistrial. There was no showing of conduct that resulted in substantial or irreparable harm to McGee's case. In fact, the record reflects that the court sustained a number of the defense's objections during the prosecution's cross-examination of McGee. As to McGee's specific complaints, the court ruled that the prosecution could ask McGee about ownership or possession of a gun on the date of the shooting or just prior to that date. A review of the record reveals that the prosecution defied the court order and specifically asked McGee if he had ever owned a gun. However, McGee never answered the question because it was objected to and the objection was sustained. The prosecution went on to ask McGee if he had owned a gun on the date of the shooting, and McGee replied, "No, I did not." As to the question about some type of "relationship" between McGee and Jackson, the prosecutor apologized to the court for the improper question, and McGee never answered the question because of the sustained objection. The trial court refused to grant a mistrial because it believed that there was not any significant prejudice to McGee by the asking of these questions. We agree. Therefore, we find that McGee was not denied his right to a fair and impartial trial.

(6) Prosecutorial Misconduct
¶ 29. McGee argues that the trial court erred by not granting him a mistrial during the prosecution's closing arguments. McGee contends that the prosecution made an improper "send a message to the community" emotional appeal to the jury.[3] He also maintains that the prosecutor improperly *363 commented on her personal opinion of his guilt. He further contends that the prosecutor also improperly commented on the fact that only one juror could cause a hung jury.
¶ 30. It is well settled under Mississippi law that "counsel is allowed considerable latitude in the argument of cases and is limited not only to the facts presented in evidence, but also to deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts." McGruder v. State, 886 So.2d 27, 32-33(¶ 20) (Miss.Ct.App.2004) (citing Wells v. State, 698 So.2d 497, 506 (Miss.1997)). "The test to determine if an improper comment by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's argument created unfair prejudice against the accused resulting in a decision influenced by prejudice." Logan v. State, 773 So.2d 338, 350(¶ 48) (Miss.2000) (quoting Dunaway v. State, 551 So.2d 162, 163 (Miss.1989)). The trial judge is vested with the discretion to determine whether an objectionable comment is so prejudicial that a mistrial should be granted. Id. (citing Alexander v. State, 602 So.2d 1180, 1182 (Miss.1992)). In this instance, however, the trial judge was never required to make a determination regarding the extent of any possible prejudice, because McGee did not object to the argument which he now contends was prejudicial. Since McGee did not object to the portion of the prosecutor's closing argument which he now finds offensive, we decline to consider this issue any further, as the issue is procedurally barred. Gatlin v. State, 724 So.2d 359, 369(¶ 43) (Miss.1998)

(7) Jury Instructions
¶ 31. McGee next argues that the trial court erred by refusing to grant his jury instruction D-4. McGee contends that the instruction properly contrasted reasonable doubt with a preponderance of the evidence. He maintains that the instruction properly stated the burden of proof in a criminal case, and it was not repetitive with any of the other instructions. McGee further argues that by refusing his instruction, the court failed to properly instruct the jury on the sufficient level of proof required by the State to convict him, because his instruction distinguished the level of reasonable doubt from a preponderance of the evidence or suspicion.
¶ 32. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss. Ct.App.2002) (quoting Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982)). Defendants do not have an absolute right to have their jury instructions granted. "A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence." Humphrey v. State, 759 So.2d 368, 380(¶ 33) (Miss.2000) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)).
¶ 33. The trial court denied proposed instruction D-4 as repetitive, finding it was already covered in the court's instructions. The court also found the instruction to be too confusing and not instructive to the jury. McGee's proposed jury instruction D-4 stated as follows:
The court instructs the jury that under the law you do not have the right to convict Baron McGee upon mere suspicion, regardless of how strong that suspicion *364 might be. You may not convict Baron McGee just because there may be a preponderance of the evidence against him or just because there may be a reason to suspect that he is guilty. Suspicion, no matter how strong or convincing, never rises to the dignity of proof beyond a reasonable doubt. Before you find Baron McGee guilty, you must be convinced solely upon the evidence presented during this trial that Baron McGee is guilty beyond a reasonable doubt.
Court Instruction No. 2 instructed the jury that its verdict must be based on more than mere suspicion: "You are to apply the law to the facts and this way decide the case. You should not be influenced by bias, sympathy, or prejudice. Your verdict should be based on the evidence and not upon speculation, guesswork, or conjecture." Court Instruction No. 3 adequately instructed the jury regarding the necessary aspects of reasonable doubt and the presumption of innocence:
The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence.
These three instructions sufficiently addressed the jury's duty to convict McGee only if it found that the State had proved beyond a reasonable doubt that he committed the charged offenses. Therefore, McGee's proposed instruction was repetitive and unnecessary.
¶ 34. Moreover, the record reflects that jury instructions C-1, C-2, C-3, C-4, C-5, and C-6 were granted along with S-1, S-2, S-3, D-2, and D-5. These instructions covered the elements of murder and aggravated assault, as well as an explanation of McGee's alibi defense. More specifically, instruction D-5 stated: "A verdict of not guilty means that you are not satisfied that the prosecution has proven Baron McGee guilty beyond a reasonable doubt. To return a verdict of not guilty, it is only necessary that you have a reasonable doubt as to the guilt of Baron McGee." We find that the instructions given fairly announced the law of the case and created no injustice. Accordingly, we find no reversible error.

(8) Ineffective Assistance of Counsel
¶ 35. McGee contends that his trial counsel failed to provide effective assistance of counsel. To support his contention, McGee cites the following alleged errors of counsel: (1) improper investigation of the case by not questioning witnesses about a cloth worn by the shooter, (2) not questioning witnesses about seeing the shooter leave on a bicycle, (3) not securing the identities of known alibi witnesses so that they could be found for trial, (4) not preparing sufficient exhibits to reveal the crime scene, (5) failure to request a speedy trial or move to dismiss for lack of a speedy trial when advising his client that he had in fact done so, (6) failure to advise and get consent to pursue continuances, (7) failure to move to suppress the defendant's statement which was damaging at trial, (8) failure to advise that a jury trial could be waived, (9) failure to keep the defendant reasonably informed, (10) not requesting a lesser included manslaughter instruction, and (11) failure to preserve error of surprise witness by declining the offered continuance.
*365 ¶ 36. The law on establishing a claim of ineffective assistance of counsel is well-settled. In order to prevail on an ineffective assistance of counsel claim, a defendant must prove that: (1) trial counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 691-92. "A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the case." Id. at 694.
¶ 37. "We note at the outset that a claim of ineffective assistance of counsel is best brought at the post-conviction relief stage because the record on direct appeal is generally insufficient to evaluate the claim." Lyle v. State, 908 So.2d 189, 196(¶ 35) (Miss.Ct.App.2005) (quoting Read v. State, 430 So.2d 832, 837 (Miss.1983)). Review of an ineffective assistance of counsel claim, when brought on direct appeal, is confined strictly to the record. Colenburg v. State, 735 So.2d 1099, 1102(¶ 6) (Miss.Ct.App.1999). "When an ineffective assistance of counsel claim is made on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert ineffective assistance of counsel in a post-conviction relief proceeding." Lyle, 908 So.2d at 196(¶ 35) (quoting Read, 430 So.2d at 837). However, we may address the merits of the claim on direct appeal when (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge. Colenburg, 735 So.2d at 1101(¶ 5).
¶ 38. In this case, we are constrained to follow the general rules regarding claims of ineffective assistance of counsel raised on direct appeal. We do not find the record in this case to affirmatively show ineffectiveness of constitutional dimensions, nor do we find any stipulation by the parties regarding the adequacy of the record. Accordingly, we deny relief without prejudice to McGee to raise this issue again via a motion for post-conviction relief, should he so choose.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNT I MURDER AND SENTENCE OF LIFE; COUNT II AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS TO RUN CONCURRENTLY TO SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] Sessions was shot twice in the chest and Paige once in the throat area. In her initial statement to police, Burton stated that Sessions was shot four times in the back, and Paige was shot in the chest. At trial, she said that she had never seen McGee before, but in her statement to the police, she said that she had often seen the shooter because "he is always over there."
[2] Jackson is a mechanic who was renting a room in his house to McGee.
[3] During closing argument, the prosecutor told the jury:

And that's where you guys come in. It's your job to stop him from running. It's your job to let him know that the citizens of Hinds County are not going to tolerate murders, not going to tolerate senseless violence. It's your job to tell him what he did was wrong and it's not going to be tolerated.